IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOHN R. DOWDY                                                                                                  PLAINTIFF

v.                      Civil No. 12-2101

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                             DEFENDANT

## MEMORANDUM OPINION

Plaintiff, John Dowdy, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff filed his application for DIB on March 18, 2008, alleging an onset date of February 17, 2008, due to kidney disease, kidney stones, diabetes, hypertension, depression, post-traumatic stress disorder ("PTSD"), and manic depression. Tr. 195, 214-215. His claims were denied both initially and upon reconsideration. Tr. 88-90, 95-96. An administrative hearing was then held on December 4, 2009. Tr. 30-75. Plaintiff was present and represented by counsel. A supplemental hearing was held on July 23, 2010, to allow Plaintiff's counsel to cross-examine the vocational expert. Tr. 13, 76-85..

At this time, Plaintiff was 39 years of age and possessed a high school education. Tr. 34. He had past relevant work ("PRW") experience as a jailer, rod man for a survery crew, and a vending machine technician. Tr. 34-38, 196, 203-213.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

On August 27, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's non-insulin dependent diabetes mellitus, hypertension, major depressive disorder, post-traumatic stress disorder, and intermittent explosive disorder did not meet or equal any Appendix 1 listing. Tr. 15-17. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light work,

> except he can sit up to 3 hours total at one time without interruptions and 6 hours total in an 8-hour workday, stand/walk up to 3 hours total at one time without interruption and up to 6 hours total during an 8-hour workday, continuously climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, occasionally balance, stoop, kneel, crouch, and crawl, and tolerate occasional exposure to unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity and wetness, dusts, odors, fumes, and pulmonary irritants, extreme cold and heat, and vibrations. He is further limited to jobs which involve interpersonal contact with co-workers and supervisors which is only incidental to the work performed and which does not involve contact with the general public.

Tr. 17-18. With the assistance of a vocational expert, the ALJ then found that plaintiff could return to his PRW as a vending machine service man. Tr. 22.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on March 8, 2012. Tr. 1-4. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 12.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to

support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

    A.    <u>**The Evaluation Process**</u>:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has ehngaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her

AO72A
(Rev. 8/82)

residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

Records indicate that Plaintiff has experienced a great deal of difficulty with anger outbursts and violent behavior. In February 27, 2008, he consulted with psychologist Anitra Fay regarding this problems. Tr. 276. She found that his symptoms impacted his marriage/relationship/family, friendships/poor relationships, job/school performance, financial situation, physical health, eating habits, ability to control temper, ability to concentrate, and sleeping habits. However, Dr. Fay did not feel comfortable treating Plaintiff and referred him to Dr. David Beare.

4

In April, Dr. Beare conducted a behavioral health evaluation of Plaintiff. Tr. 281-284. His chief complaint was depression, but he also indicated that he had recently been relieved of duly at the Sheriff's Department due to his violent tendencies. Plaintiff reported a history of childhood sexual molestations by his maternal uncle from the age of two until age seven. His emotional symptoms included depression, frustration, irritability, intermittent explosive symptoms, paranoia, and impulsivity. He reported a tendency to lose control and put his fist through the wall, stating that there were at least five holes in the walls of his garage. Dr. Beare assessed him with acute trauma response verses PTSD secondary to childhood sexual abuse, major depression with psychosis, psychological factors effecting his physical condition, paranoid traits, and a global assessment of functioning ("GAF") score of approximately 50. He strongly recommended that Plaintiff receive inpatient treatment at Vista Health, and noted that reevaluation was necessary due to Plaintiff's invalid personality test results.[2] Tr. 280, 283. Dr. Beare supported Plaintiff's claim for disability.

On June 23, 2008, Plaintiff underwent a menial diagnostic evaluation with Dr. Kathleen M. Kralik. Tr. 305-313. He indicated that his depression had worsened about six months prior. Dr. Kralik assessed him with personality disorder with anti-social, narcissistic, parasitic dependent, avoidant and passive aggressive personality features; adjustment disorder with mixed disturbance of emotions and conduct; alcohol abuse in sustained partial remission; rule out attention deficit hyper activities; and, a GAF of 55-65. Tr. 311. She concluded that Plaintiff ability to carry out activities of daily living and daily adaptive functioning was estimated to be somewhat impaired for occupational purposes as his personality issues contributed to his problems; his capacity to communicate and interact in a socially adequate manner was estimated to be significantly impaired for occupational purposes; his capacity to communicate in an intelligible and effective manner was estimated to be generally adequate tor

---

[2]Dr. Beare noted that the results could have been due to conscious distortion, mental confusion, or misunderstanding the answer sheet.

occupational purposes; his capacity to cope with the typical mental/cognitive demands of basic work-like activity tasks seemed somewhat problematic in association with his poor frustration tolerance; his ability to attain and sustain concentration on basic tasks seemed problematic; his capacity to sustain persistence in completing tasks seemed problematic; and, his capacity to complete work-like tasks within an acceptable time frame seemed problematic. Dr. Kralik found Plaintiff could not manage funds without assistance, and indicated that his immaturity, parasitic-dependent and entitlement issues associated with his personality likely contributed strongly to his reported anger management issues.

On September 8, 2008, counselor Susan Smith conducted a diagnostic interview with Plaintiff. Tr. 348. She found Plaintiff to have significant difficulty in his daily functioning due to the trauma and sexual abuse he suffered as a child. He had repressed his feelings, memories, and thoughts. Plaintiff reported having had numerous jobs, no friends, minimal support, and poor overall functioning. He indicated that he was now ready to face his past and improve his functioning so he could enjoy life with his one year old child. Ms. Smith noted that he had used anger as his coping mechanism for many years. She tentatively diagnosed him with PTSD, and recommended he attend biweekly counseling to address his issues. Tr. 348.

On September 29, 2008, Plaintiff continued to experience daily anxiety, paranoia, insomnia, recurrent nightmares about his past, anger outbursts, an exaggerated startle response, and feelings of worthlessness and hopelessness. Tr. 349-353. He also reported chronic fatigue, significant weight gain, depression, and chronic irritability; problems with his support group; and, problems related to his social environment, occupation, and finances. Ms. Smith assessed him with serious limitations in communication and moderately severe limitations in familial relationships, peers/social functioning, coping skills, and behavior norms. She then diagnosed his with major depressive disorder with psychotic features; rule out psychotic disorder not otherwise specified; PTSD; and, intermittent explosive disorder and assigned him a GAF score of 40 signifying major impairments. Tr .351.

On June 25, 2009, the Plaintiff was examined by psychiatrist, Dr. Donald Chambers. Tr. 360. At this time, he was reportedly taking Effexor. He did report some improvement in his anger symptoms with Effexor, but continued to experience anger issues, racing thoughts, and hallucinations. Dr. Chambers prescribed Trileptal and neurotherapy.

On .January 28, 2010, the Plaintiff underwent a mental diagnostic evaluation by Dr. Patricia Walz. Tr. 378-383. Dr. Walz found Plaintiff's intellectual functioning to he in the low average range. She diagnosed him with major depression verses dysthymia; intermittent explosive disorder; a history of alcohol abuse largely in remission; and assessed him with a GAF of 55-60. Dr. Walz indicated that his capacity to communicate and interact in a socially adequate manner and communicate in an intelligible and effective manner was adequate. He persisted well and his speed of information processing was average. She then completed a Medical Source Statement of Ability To Do Work-Related Activities indicating that he had marked limitations in the ability to interact appropriately with the public and respond appropriately to usual work situation and changes in a routing work setting and moderate limitations interacting appropriately with supervisors and co-workers. Dr. Walz noted that his temper control was very poor. Tr. 385-.386.

After reviewing the record, we have determined that the ALJ's conclusion that Plaintiff could perform work involving incidental contact with co-workers and supervisors is not supported by substantial evidence. Accordingly, remand is necessary to allow the ALJ to reevaluate the evidence concerning Plaintiff's personality disorder/anger management issues and its impact on his ability to work with supervisor and co-workers and respond appropriately to usual work situations.

IV. **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 24th day of June 2013.

                                                 /s/ *J. Marschewski*
                                                 HON. JAMES R. MARSCHEWSKI
                                                 CHIEF UNITED STATES MAGISTRATE JUDGE